1
2
3
4
5
6
7
8                         IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SAMMY R. QUAIR, SR.,

11              Plaintiff,                    No.  2:11-cv-2294 KJN P[1]

12        vs.

13   CAPTAIN KORY HONEA, et al.,              ORDER and

14              Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Plaintiff, who is incarcerated in the Kings County Jail, proceeds in forma pauperis

18   and without counsel in this civil rights action filed pursuant to 42 U.S.C. § 1983.  At all relevant

19   times, plaintiff was incarcerated at the Butte County Jail.  This action proceeds on plaintiff's

20   verified complaint filed August 28, 2011 (ECF No. 1 ("Cmplt.")), against three Butte County Jail

21   officers:  Captain Kory Honea, Lieutenant Flicker, and Sergeant O'Hair.  Plaintiff claims that

22   these defendants conspired to violate, and did violate, plaintiff's constitutional rights to freely

23   access the courts and be free from retaliatory misconduct.

24   ////

25   _____

26        [1]  This action is referred to a United States Magistrate Judge pursuant to 28 U.S.C. §
     636(b)(1)(B), Local General Order No. 262, and E.D. Cal. L.R. ("Local Rule") 302(c).

1    Pending is defendants' motion for summary judgment, filed December 12, 2012.

2   (ECF No. 38.)  The court informed plaintiff of the requirements for opposing a motion for

3   summary judgment, pursuant to Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), and Rand v.

4   Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc) (ECF No. 42), and accorded plaintiff

5   substantial additional time to file his opposition (ECF Nos. 41, 42, 45, 47), which he filed on

6   June 24, 2013 (ECF No. 53).  For the reasons that follow, the court recommends that defendants'

7   motion be granted.

8   II.  Legal Standards for Summary Judgment

9    Summary judgment is appropriate when it is demonstrated that the standard set

10  forth in Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if

11  the movant shows that there is no genuine dispute as to any material fact and the movant is

12  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

13
            Under summary judgment practice, the moving party always bears
            the initial responsibility of informing the district court of the basis
14          for its motion, and identifying those portions of "the pleadings,
            depositions, answers to interrogatories, and admissions on file,
15          together with the affidavits, if any," which it believes demonstrate
            the absence of a genuine issue of material fact.
16

17  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

18  56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need

19  only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

20  Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

21  387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory

22  Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial

23  burden of production may rely on a showing that a party who does have the trial burden cannot

24  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

25  should be entered, after adequate time for discovery and upon motion, against a party who fails to

26  make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

III. Plaintiff's Allegations

Plaintiff alleges that defendants conspired to deny him access to the courts, by refusing plaintiff's requests to provide him with copies of his grievances and related documents that plaintiff had submitted in pursuit of his separate allegations against Butte County Correctional Deputy Andrew Gertz. Plaintiff alleges that defendants were motivated by retaliation against plaintiff for pursuing his claim against Deputy Gertz.

IV. Facts

The following facts are undisputed by the parties or, following the court's review of the record, have been deemed undisputed for purposes of the pending motion. Relevant disputed facts are also noted.

1. The parties agree that, in August 2010, plaintiff submitted four Inmate Grievance Forms related to his claim that Correctional Deputy Gertz failed to protect plaintiff from another inmate. These were designated Inmate Grievance Form Nos. 10-0902, 10-0996, 10-1010 and 10-1017. (Flicker Decl. ¶ 4.)

2. The inmate grievance process at the Butte County Jail provides that an inmate submitting an Inmate Grievance Form is provided with copies of the Grievance Form at the beginning of the process and again, with all responses, at the end of the process. Specifically

4

(Flicker Dec. ¶ 3):

> In accordance with California Code of Regulations, Title 15 §1073, the BCSO [Butte County Sheriff's Office] provides inmates with a three-level review process for their grievances.  As relevant to this case, the inmate is to complete the Inmate Grievance Form by describing and referencing an alleged violation.  The completed form will be given by the inmate to the housing officer who will sign and date the form and give copy four (goldenrod) to the inmate.  The inmate grievance process then goes through several steps in an attempt to resolve the grievance.  Upon conclusion of the grievance process, the inmate is given copy three (pink) of the completed Inmate Grievance Form.

3.  The parties agree that plaintiff was provided with copies of Inmate Grievance Form Nos. 10-0902, 10-0996, 10-1010 and 10-1017; however, they generally disagree as to the relevant timing.

4.  On August 29, 2011, plaintiff filed two federal civil rights actions:  (1) the instant action, and (2) an action against Correctional Deputy Gertz, designated Case No. 2:11-cv-2293 JAM CKD P.  Plaintiff's action against Gertz was premised on an Eighth Amendment failure-to-protect theory.

5.  On September 12, 2012, Correctional Deputy Gertz filed a motion for summary judgment in Case No. 2:11-cv-2293 JAM CKD P, which addressed the merits of plaintiff's legal claim, but did not assert that plaintiff failed to exhaust his administrative remedies.  (Id. at ECF No. 44.)  On June 18, 2013, the court granted defendant's motion for summary judgment and entered judgment for Deputy Gertz.  (Id. at ECF No. 65.)

V.  Discussion

Neither the briefing nor record evidence indicate whether plaintiff is, or was during the relevant period, incarcerated as a pretrial detainee or as a convicted prisoner, e.g. pursuant to the revocation of parole.  Because a pretrial detainee has an overriding substantive due process right to be free from institutional restrictions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 535 (1979); Redman v. County of San Diego, 942 F.2d 1435, 1440-41 (9th Cir. 1991) (en banc), the constitutional rights of pretrial detainees are generally analyzed

5

1   through a substantive due process filter.  However, because neither plaintiff nor defendants press

2   the point, and the result would not be different had they done so, the court directly analyzes

3   plaintiff's constitutional claims as presented.  Additionally, "pretrial detainees, who have not

4   been convicted of any crimes, retain at least those constitutional rights that we have held are

5   enjoyed by convicted prisoners." Bell, 441 U.S. at 545.

6       A.  Access to the Courts

7           It is well established that prisoners have a constitutional right to meaningfully

8   access the courts.  Bounds v. Smith, 430 U.S. 817 (1977); Lewis v. Casey, 518 U.S. 343, 351-55

9   (1996).  While the contours of such access may be circumstantial, see Bounds, 430 U.S. at 821-

10  28 and cases cited therein, "[o]f fundamental import to prisoners are their First Amendment

11  rights to file prison grievances, and to pursue civil rights litigation in the courts." Rhodes v.

12  Robinson, 408 F.3d 559, 567 (9th Cir. 2005) (citations and internal quotation marks and

13  punctuation omitted).  To prevail on a denial of access claim, the plaintiff must show that he

14  suffered an "actual injury" related to, and as a direct result of, defendants' alleged misconduct.

15  "In other words, a prisoner has no constitutional right of access to the courts to litigate an

16  unrelated civil claim."  Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1160

17  (9th Cir. 2003).  Thus, plaintiff must demonstrate how the challenged official acts or omissions

18  hindered his efforts to pursue a related nonfrivolous legal claim.  Lewis, 518 U.S. at 351-55.  For

19  example, actual injury may be shown if the alleged shortcomings "hindered his efforts to pursue

20  a legal claim," such as having his complaint dismissed for "for failure to satisfy some technical

21  requirement," or if he "suffered arguably actionable harm that he wished to bring before the

22  courts, but was so stymied . . . that he was unable even to file a complaint." Lewis, 518 U.S. at

23  351.

24           In his complaint, plaintiff alleged that he "filed an action in the Eastern District

25  Court against Gertz with no grievances due to this trio [defendants herein] not allowing me to

26  obtain these 4 grievances and seven request slips.  This trio are trying to protect Officer Gertz by

1    not giving me my copies for suit and damages. . . ." (Cmplt. at 4.)  In his opposition to the

2    pending motion, plaintiff claims that "these four grievances against Gertz were submitted 'after'

3    Quair filed the '<u>Quair v. Gertz</u>' case."  (ECF No. 53 at 7.)  Despite this wording, it appears, based

4    on the allegations of the complaint, that plaintiff is again stating that defendants did not provide

5    plaintiff with copies of the subject grievances prior to plaintiff initiating his federal action against

6    Deputy Gertz.

7            However, even assuming that defendants did not respond to plaintiff's earlier

8    requests for copies of his grievances and request slips, and did not provide plaintiff with those

9    documents until after plaintiff initiated his federal action against Gertz, plaintiff has not

10   demonstrated any "actual injury" as a result of such delay.

11           The Prison Litigation Reform Act ("PLRA") provides that, "[n]o action shall be

12   brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by

13   a prisoner confined in any jail, prison, or other correctional facility until such administrative

14   remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners must exhaust their

15   administrative remedies regardless of the relief they seek, <u>Booth v. Churner</u>, 532 U.S. 731, 741

16   (2001), and a prisoner's administrative remedies must be exhausted prior to filing suit.

17   <u>McKinney v. Carey</u>, 311 F.3d 1198 (9th Cir. 2002) (per curiam).  While the exhaustion

18   requirement is not jurisdictional, it is an affirmative defense that may be raised by defendants.

19   <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007) ("inmates are not required to specially plead or

20   demonstrate exhaustion in their complaints"); <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1117-19 (9th

21   Cir. 2003) (failure to exhaust is an affirmative defense).  Defendants bear the burden of raising

22   and proving the absence of exhaustion, and their failure to do so waives the defense.  <u>Id.</u> at 1119

23   n.13, and related text.

24           In the present case, it appears that plaintiff filed his action against Gertz without

25   possessing tangible proof that he had first exhausted his administrative remedies and, therefore,

26   that he was appropriately concerned that Gertz would seek dismissal on that basis.  However,

1    Gertz did not pursue this affirmative defense.  Rather, Gertz moved for, and achieved, summary

2    judgment on the merits of plaintiff's Eighth Amendment claim.  See Case No. 2:11-cv-2293

3    JAM CKD P (ECF No. 44).  Hence, plaintiff has failed to demonstrate that any "actual injury"

4    resulted from defendants' alleged misconduct.  Lewis, 518 U.S. at 351.  Therefore, plaintiff is

5    unable to demonstrate a violation of his right to access the courts, and defendants are entitled to

6    summary judgment on this claim.

7         B.  Retaliation

8              Similar shortcomings undermine plaintiff's retaliation claim.  "Within the prison

9    context, a viable First Amendment retaliation claim entails five basic elements:  (1) An assertion

10   that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's

11   protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

12   rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes, 408

13   F.3d at 567-68.  The "chilling" requirement is met if the "official's acts would chill or silence a

14   person of ordinary firmness from future First Amendment activities.'"  Id. at 568 (quoting

15   Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).

16   However, direct and tangible harm will also support a First Amendment retaliation claim.

17   Rhodes, at 568 n.11.  "[A] plaintiff who fails to allege a chilling effect may still state a claim if

18   he alleges he suffered some other harm" as a retaliatory adverse action.  Brodheim v. Cry, 584

19   F.3d 1262, 1269 (9th Cir. 2009), citing Rhodes, 408 F.3d at 568, n.11.

20             Filing administrative grievances and initiating litigation are protected activities,

21   and it is impermissible for prison officials to retaliate against prisoners for engaging in those

22   activities.  Rhodes, 408 F.3d at 568.

23             Plaintiff claims that defendants, acting in retaliation for plaintiff's administrative

24   charges against Gertz, withheld evidence that plaintiff had administratively exhausted those

25   charges, in an effort to prevent plaintiff from pursuing a court action against Gertz.  However,

26   plaintiff's claims of injury are vague and confusing, and there is no evidence demonstrating that

1  defendants' alleged misconduct caused plaintiff harm or chilled the further exercise of his First

2  Amendment rights.

3           Pursuant to his complaint, plaintiff alleges, "I can't believe they are all 3 doing

4  this to me, I can only imagine what the captain will allow his officers to do to me behind closed

5  cell doors and out of sight/blind spots of surveillance cameras. . . . I was in jail two other times

6  trying to pursue my action against officer Mr. Gertz.  But both times . . . the Captain or

7  Lieutenant called the District Attorney and had my court charges dismissed on two other

8  occasions and that is how I lost control of my 4 grievances and 6-8 request slips against officer

9  Mr. Gertz."  (Cmplt. at 4.)  In his opposition to the pending motion, plaintiff alleges that the four

10  subject grievances "were 'manipulated' out of my hands by the undersheriff Kory Honea," and

11  one day thereafter plaintiff's "court charges" were "strangely" dropped, and plaintiff "was sent to

12  prison on a parole violation."  (ECF No. 53 at 7-8.)  "Not only was Quair stripped of his paper

13  'legal' work and sent to prison, but was retaliated against when Quair returned back to jail.

14  Common knowledge says that defendants not only violated Quair's First Amendment but the

15  14th Amendment."  (Id. at 8-9.)  Plaintiff also states that he is investigating whether "the district

16  attorney knowingly and willingly committed 'conspiring retaliating acts' with defendants."  (Id.

17  at 8.)

18           These allegations and arguments fail to demonstrate that defendants' alleged

19  misconduct result in a "direct and tangible harm" to plaintiff, or had a "chilling effect" on

20  plaintiff's exercise of his First Amendment rights.  Because plaintiff has failed to demonstrate

21  any harm resulting from defendants' alleged retaliatory misconduct, defendants are entitled to

22  summary judgment on plaintiff's retaliation claim.

23     C.  Conspiracy

24           To prevail on a conspiracy claim pursuant to Section 1983,[2] the plaintiff must

25  _____

26  [2] Conspiracies motivated by invidious discrimination are unconstitutional under 42
U.S.C. § 1985.

1  demonstrate that defendants entered into "an agreement or meeting of the minds to violate

2  [plaintiff's] constitutional rights."  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (citation

3  and internal quotations omitted).  In addition, plaintiff must demonstrate an "actual deprivation

4  of constitutional rights resulting from the alleged conspiracy."  Hart v. Parks, 450 F.3d 1059,

5  1071 (9th Cir. 2006) (citation and internal quotations omitted).

6          In the present case, plaintiff has failed not only to demonstrate an "actual

7  deprivation of constitutional rights resulting from the alleged conspiracy," Hart, 450 F.3d at

8  1071, but his assertion of a conspiracy is "nothing more than a formulaic recitation of the

9  elements of a constitutional conspiracy claim," Ashcroft v. Iqbal, 556 U.S. 662, 681(2009)

10  (citation and internal quotations marks omitted).  Plaintiff alleges, for example, that "defendants

11  committed illegal conspiring acts of retaliation measures against plaintiff."  (ECF No. 53 at 6.)

12  Such conclusory allegations are "not entitled to the assumption of truth," Iqbal, 556 U.S. at 680.

13  Accordingly, defendants are entitled to summary judgment on plaintiff's conspiracy claim.

14  VI.  Conclusion

15          Accordingly, IT IS HEREBY ORDERED that:

16          1.  The Clerk of Court is directed to randomly assign a district judge to this action.

17          In addition, for the foregoing reasons, IT IS HEREBY RECOMMENDED that:

18          1. Defendants' motion for summary judgment (ECF No. 38), be granted.

19          2. Judgment be entered for defendants Honea, Flicker and O'Hair.

20          3.  This action be closed.

21          These findings and recommendations are submitted to the United States District

22  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

23  after being served with these findings and recommendations, any party may file written

24  objections with the court and serve a copy on all parties.  Such a document should be captioned

25  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

26  objections shall be filed and served within 14 days after service of the objections.  The parties are

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   DATED:  July 24, 2013

4

5                                                 _____

6                                                 KENDALL J. NEWMAN
                                                  UNITED STATES MAGISTRATE JUDGE

7   quai2294..msj

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26